UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DAVID P. LUKASIK,               ) | |
|                                 ) | |
|    Plaintiff,    ) | |
|                                 ) | |
|    v.            ) | CAUSE NO.: 2:21-cv-263 |
|                                 ) | |
| STATE FARM FIRE AND CASUALTY    ) | |
| COMPANY,                        ) | |
|                                 ) | |
|    Defendant.    ) | |

### OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment, filed by the defendant State Farm and Casualty Company ("State Farm") [DE 28], and the parties' requests to strike certain evidence from the summary judgment record [DE 33, 41]. For the following reasons, the motions to strike are **GRANTED in part and DENIED in part**. The defendant's motion for summary judgment is **GRANTED**.

### *Background*

This case is about a property that the plaintiff, David P. Lukasik, sold to Wayne and Tammie Swanson under a "rent to own" contract. The Swansons agreed to pay for the house in installments over 30 years, during which the Swansons could live in the house and Lukasik would retain title. Lukasik claims that in September and October 2018, he found out about substantial damage to the house, which he attributed to damage from a storm and vandalism by the Swansons and their guests. He filed a landlord's insurance claim with State Farm. After paying a portion of the claim, State Farm ultimately denied the remainder and rescinded Lukasik's policy, finding that he had misrepresented key details about the claim and failed to immediately notify State Farm and the police about the damage.

Lukasik sued for breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), and intentional infliction of emotional distress (Count III). On May 31, 2023, State Farm moved for summary judgment on all counts, arguing that it was justified in denying the claim and canceling the policy. Lukasik filed a response on June 28, 2024. [DE 36]. On July 12, 2023, State Farm filed its reply. [DE 41].

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment. As a result, this court has jurisdiction to decide this case pursuant to **28 U.S.C. § 636(c)**. By agreement of the parties, this case was transferred to the undersigned magistrate judge on February 1, 2024.

***Undisputed Material Facts***

Lukasik owned[1] the property located at 6681 Vienna Avenue, Portage, Indiana. On February 27, 2004, he contracted to sell the property to Wayne and Tammie Swanson, under what Lukasik called a "rent to own" contract. The contract called for the Swansons to make monthly payments for 30 years until the sale price was paid. During that time, the Swansons were entitled to possession of the house, but they had to keep the property in "reasonable repair" and refrain from illegal activity there, among other conditions. Lukasik retained title to the property until the full balance was paid. [Pl. Ex. A (Declaration of David P. Lukasik) ¶¶ 2, 6-7; Def. Ex. A].

Prior to the sale, Lukasik maintained a homeowner's insurance policy for the house with State Farm. [Def. Ex. F (Declaration of Victor Rodriguez) ¶ 32]. In September 2004, after showing the sale contract to a State Farm agent, the agent advised him that he needed to change his coverage to a landlord's insurance policy. [Pl. Ex. A ¶ 9; Def. Ex. G (Examination Under

---

[1] The house was owned by the David Phillip Lukasik Trust, of which Lukasik himself was trustee. [Def. Ex. A at 1]. Since the distinction is not relevant to the motion, the court refers to Lukasik as the owner (as Lukasik does in his own briefing).

2

Oath of David P. Lukasik), 41:20-42:9]. Lukasik renewed that policy annually until State Farm cancelled it in March 2021. [Pl. Ex. A ¶ 11]. Under the policy, State Farm insured Lukasik for "accidental direct physical loss" to the property, with certain exceptions. A provision labelled "Your Duties After Loss" required Lukasik to "give immediate notice to [State Farm]" of any potential loss, "and in case of theft, vandalism, or malicious mischief, also to the police." The policy also was voidable if Lukasik "intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss." [Def. Ex. J at 20, 22].

1. **The February 1, 2019, Insurance Claim**

In October 2018, Keith Hughes, a neighbor, complained to Lukasik about the condition of the Swanson residence. In a later deposition, Hughes described the property as in "a state of disarray." [Def. Ex. C (Deposition of Keith Hughes) 9:4-10:20. Until Hughes's complaint, no neighbor had raised any concerns to Lukasik about the property, except about yard maintenance and the number of cars outside. [Pl. Ex. A ¶ 68]. Lukasik had driven by the property approximately once every two years and never observed any damage to it. [Def Ex. G, 69:15-22].

On October 17, 2018, Lukasik's attorney sent a letter to the Swansons, stating that they breached the contract for nonpayment and for failing to maintain the house. [Def. Ex. D]. Within weeks of that letter, the Swansons vacated the property. On February 1, 2019, after the Swansons vacated, Lukasik went to the house and inspected the interior for the first time since contracting with the Swansons. Lukasik discovered "a horrible odor" in the house and holes in the walls that appeared to have been punched or kicked. There were "barrels of chemicals" throughout the house and what Lukasik believed to be drug paraphernalia and the residue of narcotics. Lukasik

3

concluded that "[a] substantial amount of drywall and insulation had to be removed . . . The damage to the Residence was extraordinary." [Pl. Ex. A ¶¶ 13, 16, 18-19].

Lukasik filed a claim with State Farm, dated February 1, 2019. Along with the claim, Lukasik described the extensive damage to a State Farm adjuster, telling State Farm that a neighbor had told him the Swansons had a "party" before they vacated. [Pl. Ex. A ¶¶ 25, 28; Def. Ex. E (Declaration of Michelle Swisher) ¶ 5].

2. **State Farm's investigation**

On February 5, 2019, a State Farm adjuster inspected the property with Lukasik present. The adjuster noted various problems with the home, including damage to doors and walls, tiles forcibly removed, cigarette burns, debris, water damage, missing appliances and cabinets, electrical damage, mold, a deck that was unsafe to walk on, and a terrible odor in the garage, among many others. [Def. Ex. E-1 at 82-84].

State Farm also requested certain documents from Lukasik to supplement his claim, including the Swanson contract and a 2018 Schedule E tax form. [Def. Ex. E-1 at 85]. On February 26, 2019, Lukasik told State Farm that he could not provide the documents at that time, because he was in Florida and that he believed the contract may have been destroyed in a fire. [Pl. Ex. A ¶¶ 24, 31]. Proceeding without those documents, State Farm determined that the dwelling claim represented $29,416.95 in damage, and the actual cash value of his claim was $9,290.07, with another $3,246.97 available if certain damaged property was to be replaced. State Farm's adjuster suggested that some of the damage resulted from "hard living and maintenance issues," rather than vandalism or theft, and therefore not compensable under the policy. On March 14, 2019, State Farm paid Plaintiff the cash value of $9,290.07. [Def. Ex. E ¶¶ 7, 10-12; Def. Ex. E-1 at 82].

Lukasik contested State Farm's assessment of the claim, eventually submitting a sworn "proof of loss" over $200,000 based on an assessment by a public adjuster. [Pl. Ex. A ¶ 30, Def. Ex. F (Declaration of Victor Rodriguez) ¶ 12]. During State Farm's continued investigation into the claim, it was unable to reach Lukasik for several weeks despite multiple attempts. [Def. Ex. F ¶ 5]. Lukasik filed a police report on June 3, 2019, roughly four months after he had discovered the damage to the interior. [Def. Ex. E-1 at 68; Def. Ex. F, ¶¶ 5, 7]. On July 24, 2019, Lukasik met with a State Farm adjuster in person, and he provided a copy of the Swanson contract and a completed 2018 IRS Schedule E form, which showed the payments from the Swansons as "rents received." He filled in the form and produced it in response to State Farm's request, although he had not filed that form with his 2018 taxes. [Pl. Ex. A, ¶¶ 26, 33; Def. Ex. F ¶ 10; Def. Ex. G, 91:16-94:21].

On September 20, 2019, and October 4, 2019, Lukasik sat for an examination under oath at State Farm's request. Lukasik explained that he considered the Swansons as the "owners" of the property and himself as "the bank." The contract was structured so he could avoid reporting the Swansons' payments as income on his taxes, since he could apply the payments toward the purchase price of the house. [Def. Ex. G, 74:15-16, 76:18-77:19]. Asked what his "understanding of the cause of the damage" to the property was, Lukasik responded: "Well, I heard [the Swansons] had a big party the night before [vacating], and everybody just got all drunk and drugged up. Because they were big druggies, kicked holes in the drywall and ruined everything that they could." [*Id*. 139:17-23].

In September and October 2019, State Farm spoke to two neighbors, Louis Rodriguez, and Keith Hughes, and to Wayne Swanson. All three claimed that the damage was caused by gradual disrepair, rather than vandalism. Rodriguez denied ever telling Lukasik that a big party

or drug activity occurred at the property. Hughes told State Farm that the residence had been deteriorating for a long time due to the Swansons not properly maintaining the house. Swanson told State Farm that the damage was caused by "breakdowns over the years." State Farm also spoke to a detective from the Portage County Police Department, who told State Farm that the damage to the residence did not occur in one day. [Def. Ex. F ¶¶ 13-18].

Rodriguez and Hughes provided more detail in later depositions. Rodriguez testified that approximately five years after Lukasik moved out (which would have been 2009), he ran into Lukasik by chance and told him that the house was "starting to fall . . . apart." Rodriguez testified that although the Swansons had parties from time to time, "[t]hey didn't seem like outrageous parties . . . It wasn't like it was people going crazy all over the damn place." [Def. Ex. B (Deposition of Louis Rodriguez) 12:3-14:13]. Hughes testified that in the 18 years in which he had lived on that street, the Lukasik/Swanson house was consistently "dilapidated, falling apart." But Hughes was "surprised" when Lukasik told him of potential drug activity in the house, because he had "never seen anything unusual" there. [Def. Ex. C, 8:1-9:1, 11:3-11:23].

State Farm requested that Lukasik produce additional documents, and review and sign the transcript of his examination under oath. On January 14, 2020, Lukasik's counsel responded that Lukasik was "still reviewing" the transcript and gathering documents, a "process which has been made more difficult because he is in Florida" for the winter. [DE 33-8]. After repeated prodding by State Farm, Lukasik provided the signed transcript on March 17, 2020. On March 23, 2020, he provided a portion of the requested documents and stated that further supplementation was forthcoming. [Def. Ex. F ¶¶ 19-25; DE 33-10]. On May 14, 2020, in response to another reminder, counsel stated that Lukasik would provide the documents once he was "out of

6

quarantine in Florida." Those outstanding documents never were produced.[2] [Def. Ex. F ¶¶ 28-30; DE 33-11].

### 3. Denial of claim

Ultimately, Lukasik chose to repair the house with the claim still pending. He provided State Farm with "copies of receipts, invoices, and documentation of the replacement cost." [Pl. Ex. A ¶ 51; DE 31-11]. On January 25, 2021, Lukasik's counsel sent a letter to State Farm, noting that no decision had been reached, that the two-year limitation period for suing under the insurance policy was expiring, and proposing a neutral appraisal to resolve the issue. [DE 33-12]. State Farm refused the appraisal but did not make a decision within the limitation period, so Lukasik filed a complaint in Porter Superior Court. [Pl. Ex. A ¶ 54].

Finally, on March 21, 2021, State Farm denied the rest of the claim and voided the insurance policy, finding that Lukasik had "intentionally concealed and materially misrepresented the facts and circumstances surrounding the loss." [Def. Ex. F ¶ Decl. 31; DE 33-13]. As a potential alternative basis for denial, State Farm stated that it was "not able to resolve" the question of "whether this is a direct, accidental loss," and whether Lukasik breached a duty to give immediate notice to State Farm and to the police. State Farm also terminated Lukasik's coverage retroactive to February 1, 2019, even though he had paid two annual premiums while his claim was pending. [Pl. Ex. A ¶ 56, DE 33-14].

---

[2] In response to the allegation in State Farm's Statement of Material Facts that he "never produced these [outstanding] documents to State Farm during State Farm's investigation of the claim," Lukasik simply wrote: "Denied." [DE 33 ¶ 63]. Lukasik did not provide a "citation to evidence supporting" his dispute of that fact, N. D. Ind. L. R. 56-1(b)(2)(C), and the court is unable to discern the basis for the dispute. Accordingly, the court considers that fact admitted.

*Motions to Strike*

At the onset, each party moves to strike certain facts as inadmissible hearsay.[3] Hearsay refers to statements made outside of court and offered for the truth of the matter asserted and is generally not admissible at trial unless it falls under a recognized exception. *See* **Fed. R. Evid.** 801-807. "To be considered on summary judgment, evidence must be admissible at trial . . . If the evidence is inadmissible hearsay, the courts may not consider it." **Prude v. Meli**, 76 F.4th 648, 661 (7th Cir. 2023). Most of the parties' objections pertain to witness statements or recorded notes about the condition of the property or the circumstances of Lukasik's insurance claim. Such statements are not admissible for the truth of the content but may be admissible as evidence of the state of mind of the declarant or the listener. *See*, *e.g.*, **Prude**, 76 F.4th at 661; **Simpson v. Beaver Dam Cmty. Hosps., Inc.**, 780 F.3d 784, 796 (7th Cir. 2015).

**1. Witness Statements**

Given the number and breadth of the objections, the court will not attempt to analyze each individual objection to witness statements but describes two examples. For one, Lukasik objects to a State Farm agent's statement that neighbor Louis Rodriguez "denied ever telling Mr. Lukasik that a big party or drug activity occurred at the [Swanson] Residence." [DE 33 at 2-3, citing Def. Ex. F ¶ 14]. That statement is not admissible to show what Rodriguez told Lukasik but would be admissible to show that State Farm believed there had been no big party at the residence, or to show how State Farm reached that conclusion. Similarly, State Farm objects to Lukasik's statement that in October 2018, neighbor Keith Hughes "informed [Lukasik] that the

---

[3] Lukasik also objected that certain of State Farm's exhibits were mislabeled, and others improperly listed confidential information of parties and witnesses on the public docket. [DE 33 at 2-3]. The court directed the parties to confer on these issues and bring any remaining dispute to the court's attention. [DE 35]. State Farm was granted leave to file certain exhibits under seal [DE 38], and no further filings were made on those issues. Accordingly, the court considers those two issues resolved.

exterior of the property was damaged and that gutters were falling off." [DE 42 at 22-23, citing Pl. Ex. A ¶ 69]. The statement is not admissible to show the condition of the property but would be admissible as evidence of what Lukasik believed about the condition of the property at that time. When the court can discern a relevant, admissible purpose for the disputed statement, the statement will not be stricken, but will be considered for that limited purpose.

**2. Claim File**

Lukasik specifically objects to the introduction of State Farm's claim file. *See* [DE 32-2, 32-3, 32-4 at 1-76]. As with witness statements, notes in the claim file can show the state of mind of the declarant (here, the State Farm employee making the notes). The statements also are admissible to show the information relied on by the individuals who made the final decision to deny the claim. Most of the claim file is also admissible under the business record exception to the hearsay rule. The exception provides for the admission of records where a witness shows they were (1) made at or near the time of the event being described; (2) kept as a regular practice during regularly conducted business activity; and (3) the opposing party does not show that the source or circumstances of preparation indicate a lack of trustworthiness. **Fed. R. Evid. 803(6)**; *see* **Torry v. City of Chicago**, 932 F.3d 579, 585-86 (7th Cir. 2019).

State Farm's witness states that the notes were maintained in the regular course of business and include "information and documents created during the course of the handling of Mr. Lukasik's claim . . . and information and documents received from others regarding that claim." [Def. Ex. E ¶ 3, Def Ex. F ¶ 3]. Lukasik presents no evidence or argument that the source or circumstances of preparation make the notes untrustworthy. The agents' notes appear to be

9

contemporaneous[4] records of actions or observations they made during the pendency of the claim. The notes are continuous, broad in scope (including matters not relevant to this lawsuit), and extend back to the beginning of the claim, including a date and time of entry and the name of the person making the note. These factors all suggest that the documents were maintained in the regular course of business and not prepared for litigation. *See* ***McCormick v. Goebel***, 655 F. Supp. 3d 748, 758 (N.D. Ind. 2023). When properly authenticated, courts frequently admit such records under the business records exception. *See*, *e.g.*, ***Smith v. Liberty Mut. Fire Ins. Co.***, 495 F. Supp. 3d 1019, 1032 (D.N.M. 2020); ***GEICO Indem. Co. v. Smith***, No. 3:12-CV-08127 JWS, 2017 WL 1282789, at *4 (D. Ariz. Apr. 5, 2017); ***Lucky Leather, Inc. v. Mitsui Sumitomo Ins. Co. of Am.***, No. CV1209510MMMPLAX, 2013 WL 12139353, at *5-6 (C.D. Cal. Nov. 29, 2013), affirmed, 650 F. App'x 364 (9th Cir. 2016); *see also* ***Hansen v. Country Mut. Ins. Co.***, No. 18 C 244, 2023 WL 6291629, at *16 n. 19 (N.D. Ill. Sept. 25, 2023) (if properly authenticated, "adjuster's written memorialization[s] contained in the claim file [] could fall within the business records exception").

Subject to the limitations described below, the court finds that the records are admissible for purposes of summary judgment.

The claim file also contains State Farm agents' recitations of statements by other witnesses, and public records compiled from background checks, some of which could be inadmissible "double hearsay." *See*, *e.g.*, ***Traum v. Equitable Life Assurance Soc'y of U.S.***, 240 F. Supp. 2d 776, 781 (N.D. Ill. 2002). "If the source of the information is an outsider, Rule 803(6) does not, by itself, permit the admission of the business record. The outsider's statement

---

[4] To the extent there may be specific notes within the 329 disputed pages that are unidentified in the briefing and do not meet the timeliness requirement, the court does not rely on those references and therefore denies any request to strike those statements as moot.

must fall within another hearsay exception." ***Datamatic Servs., Inc. v. United States***, 909 F.2d 1029, 1033 (7th Cir. 1990) (quoting ***United States v. Baker***, 693 F.2d 183, 188 (D.C. Cir. 1982)). As with other witness statements, third party statements contained in the claim file are admissible to show the state of mind of the declarant or the agents who adjusted the claim, or for the truth of the matter asserted if they fit within a recognized exception.

### 3. Lukasik's Declaration

State Farm objects to some of Lukasik's asserted material facts that rely on his declaration, arguing that he is not competent to testify on those issues. To establish or dispute a material fact at summary judgment, an affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." **Fed. R. Civ. P. 56(c)(4)**; *see* ***Moore v. W. Illinois Corr. Ctr.***, 89 F.4th 582, 593 (7th Cir. 2023).

First, State Farm objects to Lukasik's discussion of certain items he saw in the house, including "the residue of what appeared to be narcotics," and "barrels of chemicals" that he deemed to be "drug paraphernalia." [DE 33 ¶¶ 98, 105-107]. Lukasik's declaration does not establish that he is competent to determine whether a particular chemical or vessel constitutes drug paraphernalia or whether any "residue" he found in the house was in fact a narcotic. Accordingly, these paragraphs are not admissible for those purposes but may be used as evidence of Lukasik's own belief that there had been drug activity in the house.

State Farm also objects to Lukasik's allegations about State Farm's own state of mind or how State Farm interpreted its policy. Although State Farm may disagree with the language used[5], several of these paragraphs [DE 33 ¶¶ 108, 122, 125, 130-132, 136] are directed to matters

---

[5] To the extent there is ambiguous language within these paragraphs that could be construed as an allegation of State Farm's state of mind, or as a legal conclusion, the fact will not be considered for that purpose. For example, when

11

within Lukasik's personal knowledge and will not be stricken. Lukasik is competent to testify to *his own* impressions of what State Farm was doing, but not as to State Farm's state of mind. *See*, *e.g.*, [¶¶ 130-131 ("*It appeared* that Defendant was delaying a decision on the claim until after the deadline to file suit expired . . . As a result, Plaintiff requested an appraisal of the claim in accordance with the Policy through counsel who sent a letter to opposing counsel regarding such on January 25, 2021.") (emphasis added)].

However, the court agrees with State Farm that Paragraphs 138 through 142 are essentially statements of opinion about State Farm's intentions, or legal conclusions about what actions State Farm should or should not have taken. *See*, *e.g.*, [¶¶ 140-141 ("[I]t became clear that Defendant was trying to make the claim process so difficult that Plaintiff would give up on the claim . . . When that didn't work, they tried to delay the claim past the contractual deadline for filing suit.")]. These statements were not appropriately placed among Lukasik's Additional Material Facts. *See* **N.D. Ind. 56-1(b)(2)(D)**. Lukasik's declaration does not show he is competent to testify to these assertions as facts, and therefore those paragraphs are stricken.

### *Discussion*

Under **Federal Rule of Civil Procedure 56(a)**, summary judgment is proper only if the movant has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); ***Garofalo v. Vill. of Hazel Crest***, 754 F.3d 428, 430 (7th Cir. 2014); ***Kidwell v. Eisenhauer***, 679 F.3d 957, 964 (7th Cir. 2012); ***Stephens v. Erickson***, 569 F.3d 779, 786 (7th Cir. 2009). A fact is material if it is outcome determinative under applicable law. The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence

---

Lukasik states that "Defendant accepted coverage for the claim and sent [Lukasik] a payment for the damages . . ." [¶ 108], that does not show State Farm's "acceptance" of any particular allegation by Lukasik, or any aspect of the merits of the claim, but is evidence that State Farm made a payment in response to the claim.

of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Stephens*, 569 F.3d at 786.

When the movant has met its burden, the opposing party cannot rely solely on the allegations in the pleadings but must "point to evidence that can be put in admissible form at trial, and that, if believed by the fact-finder, could support judgment in [her] favor." *Marr v. Bank of Am., N.A.*, 662 F.3d 963, 966 (7th Cir. 2011); *see also* *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.")). The non-moving party cannot rely on conclusory allegations. *Smith v. Shawnee Libr. Sys.*, 60 F.3d 317, 320 (7th Cir. 1995). Failure to prove an essential element of the alleged activity will render other facts immaterial. *Celotex*, 477 U.S. at 323; *Filippo v. Lee Publications, Inc.*, 485 F. Supp. 2d 969, 972 (N.D. Ind. 2007) (the non-moving party "must do more than raise some metaphysical doubt as to the material facts; she must come forward with specific facts showing a genuine issue for trial").

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *McDowell v. Vill. of Lansing*, 763 F.3d 762, 764-65 (7th Cir. 2014). The trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find for that party after a trial. *Anderson*, 477 U.S. at 248; *Cung Hnin v. Toa, LLC*, 751 F.3d 499, 504 (7th Cir. 2014); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

State Farm asserts three bases for summary judgment on Lukasik's breach of contract claim: first, that Lukasik's claim is not covered under the policy; second, that Lukasik breached the "concealment or fraud" provision of the policy by making material misrepresentations to State Farm; and third, that Lukasik breached the policy by failing to promptly notify State Farm and the police when he found out about the damage. The court will first address whether Lukasik breached the concealment or fraud provision of the policy, rendering the policy void.

### A. Material misrepresentations

State Farm argues that it does not owe any Lukasik any coverage under the policy because he "intentionally concealed or misrepresented [a] material fact or circumstance relating to [the] insurance." Under the policy's "concealment or fraud" provision:

> This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

[Def. Ex. T, p. 29].

According to State Farm, Lukasik cannot dispute that he breached that provision based on his own statements about the party and his submission of an IRS form that he did not file as part of a tax return.

State Farm claims that Lukasik "stated to State Farm on two separate occasions that the Claim was the result of a big party thrown by Wayne Swanson the night before he vacated the Residence." [DE 29 at 23]. State Farm's adjuster, Michele Swisher, claims Lukasik told her that "all of the damage" was caused by a big party. However, in an affidavit, Lukasik denies making that statement to Swisher but concedes that he told Swisher that he had heard the Swansons "had a party" at the residence that caused some of the damage. In any event, during State Farm's sworn examination of Lukasik he was asked:

> Q: So what caused the damage, what's your understanding of the cause of the damage?
>
> A: [Lukasik]: Well, I heard that they had a big party the night before, and everybody just got all drunk and drugged up. Because they were big druggies, kicked holes in the drywall and ruined everything that they could . . .

[Def. Ex. G (Deposition of Lukasik), 139:17-140:10].

Lukasik first told State Farm that Rodriguez was the neighbor who told him about the party. State Farm later deposed Rodriguez who denied making that statement to Lukasik. In his affidavit, Lukasik backpedaled and stated that he was informed by a neighbor, who he could not recall, about the party. [Pl. Ex. A, p. 4]. Lukasik further claimed that he observed kicked-in walls, cigarette burns in the carpet, and suspected drug paraphernalia inside the residence, which he believed was caused by the party. *Id.* But after a lengthy investigation into the matter, Swisher concluded that the damage to the property did not appear to be an act of vandalism or theft, and did not occur during a single incident. [DE 32-1, ¶ 7].

Lukasik's affidavit, filed in opposition to State Farm's motion for summary judgment, is belied by deposition testimony. However, Lukasik cannot change his testimony by filing a blind affidavit without explaining the inconsistencies of his prior statements. *See* **Aberman v. Abouchar & Sons, Inc.**, 160 F.3d 1148, 1150 (7th Cir. 1998) citing **Russell v. Acme–Evans Co.**, 51 F.3d 64, 67–68 (7th Cir.1995) ("Where deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken."); **Seshadri v. Kasraian**, 130 F.3d 798, 804 (7th Cir. 1997) (holding that a party cannot rely on a "blind affidavit to retract admissions..."). Thus, Lukasik is bound by his deposition and cannot rely on his subsequent affidavit.

By contrast, State Farm has presented evidence that no neighbor was aware of outrageous parties or drug use inside the home: Rodriguez denied reporting to Lukasik that a party took

place before the Swansons vacated the residence; a police report concluded that the damage did not occur in one day; and a thorough investigative report concluded that the damage took place over several years. In fact, Hughes, another neighbor of the residence at issue, reported to State Farm that the residence had been deteriorating for some time and that he contacted Lukasik to fix it. [Def. Ex. F, ¶ 17].

The only evidence presented consistent with the Local Rules conclusively shows that Lukasik lied to State Farm when he reported that Rodriguez told him about a wild party the night before the Swansons moved out. This was a material representation as to the cause of the damages under the terms of the Policy.

Along with the misrepresentation about the party, State Farm argues that Lukasik "fabricated" a 2018 IRS Schedule E form in support of his claim for lost rent. An IRS Schedule E Form is used, among other things, to report income or loss from rental real estate[6]. The record shows that State Farm requested an IRS Form Schedule E to assess the rental rate and calculate lost rents, which Lukasik prepared and sent to State Farm on July 24, 2019. Notably, Lukasik did not file that form with his 2018 tax return, or any year since 2004. State Farm suggests that Lukasik submitted the deceptive form because the Swansons "owned" the property and he was concerned that State Farm would not make any payments under a landlord's policy.

The form Lukasik provided State Farm invented rents received for the residence in the amount of $9,660. [Def. Ex. G, 91:16-94:21]. Yet Lukasik had no record of how much the Swansons had paid him over the years and merely speculated about the amount. *Id.* Indeed, Lukasik did not report rent from the property as income to the government at any time during the Swansons' occupation of the residence. His failure to file the necessary form indicating income received from rental property indicates that Lukasik did not view the Swansons as tenants.

---

[6] 2018 Instructions for Schedule E (Form 1040) (irs.gov); https://www.irs.gov/pub/irs-prior/i1040se--2018.pdf.

However, when it came to the Loss of Rents coverage under the policy, Lukasik reported that his "tenants" had not paid rent for several months. This was a material misrepresentation to conceal the actual status of the relationship between the parties.

After reviewing the admissible evidence about the alleged party and fabricated IRS form, the court finds that Lukasik's actions constituted material misrepresentations that violated the policy's "concealment or fraud" provision. As a result, State Farm had a basis to deny the entire claim and is entitled to summary judgment.

### B. Breach of good faith and fair dealing

Lukasik contends that State Farm violated its duty to deal in good faith with the insured. However, given Lukasik's own breaches of the contract, the court need not address the merits of this claim. *See* **Nat'l Athletic Sportswear Inc. v. Westfield Ins. Co.**, 528 F.3d 508, 524 ("If an insurance company can breach its contract yet still not commit bad faith, it is all but impossible for an insurance company to commit bad faith when it is the insured [] that has breached the contract."). Accordingly, the court finds that State Farm is entitled to summary judgment as to the breach of good faith and fair dealing claim.

### C. Intentional infliction of emotional distress

Finally, State Farm seeks summary judgment on Lukasik's claim for intentional infliction of emotional distress ("IIED"). "The elements of the tort are that the defendant: (1) engages in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another." **Ellis v. State**, 194 N.E.3d 1205, 1218 (Ind. Ct. App. 2022). "It is not enough for a defendant to have 'acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for

another tort.'" ***Gable v. Curtis***, 673 N.E.2d 805, 809 (Ind. Ct. App. 1996) (quoting **RESTATEMENT (SECOND) OF TORTS** § 46 cmt. d (1965)). The conduct must be "so extreme in degree as to go beyond all possible bounds of decency and should be regarded as atrocious and utterly intolerable in a civilized society." ***Ellis***, 194 N.E.3d at 1218 (quoting ***Curry v. Whitaker***, 943 N.E.2d 354, 362 (Ind. Ct. App. 2011)).

Mishandling an insurance claim – even unreasonably – is not what courts recognize as "atrocious and utterly intolerable in a civilized society." *See* ***Hamilton v. State Farm Mut. Auto. Ins. Co.***, No. IP 00-1718-C-T, 2002 WL 664020, at *4 (S.D. Ind. Mar. 13, 2002) ("Plaintiff accused State Farm of intentionally causing emotional distress with its unreasonable delay[,] failure to pay . . . and its implication [of] a fraudulent claim . . . Even if this is true, it simply does not rise to the level of conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency . . .'"); *see also* ***Skinner v. Metro. Life Ins. Co.***, 829 F. Supp. 2d 669, 684-87 (N.D. Ind. 2010) ("Even if MetLife wrongfully rejected Linda's claims, nothing in the complaint could plausibly give rise to the conclusion that it acted . . . in a way totally unacceptable in society.").

Lukasik has not presented any evidence substantiating the kind of "*severe* emotional distress" necessary for an IIED claim. *See* ***Jimenez v. CRST Specialized Transp. Mgmt., Inc.***, 213 F. Supp. 3d 1058, 1066 (N.D. Ind. 2016) ("Jimenez alleges, in a conclusory fashion, only that he suffered severe emotional distress and sought treatment from mental health professionals . . . Even if support for that proposition could be found[,] the conclusory allegation is insufficient to prevent denial of summary judgment."). Nor has Lukasik shown that State Farm denied his claim with "the *intent* to harm [him] emotionally[, which is] the basis for the tort." ***Curry***, 943

N.E.2d at 361 (quoting *Cullison v. Medley*, 570 N.E.2d 27, 32 (Ind. 1991)) (emphasis added). The court therefore grants summary judgment to State Farm on this claim.

### *Conclusion*

For the reasons described herein, the court **GRANTS in part and DENIES in part** the parties' requests to strike [DE 33, 41], as outlined above. The court **GRANTS** State Farm's motion for summary judgment [DE 28]. This case is **DISMISSED**.

So ORDERED this 2nd day of April, 2024.

s/ Andrew P. Rodovich  
MAGISTRATE JUDGE  
UNITED STATES DISTRICT COURT
